UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KYLE D. MICHAUD, | ) |
|     Plaintiff, | ) |
| v. | )    1:13-cv-00270-JDL |
| NEXXLINX OF MAINE INC., OPENTABLE INC., | ) |
|     Defendants | ) |

**RECOMMENDED DECISION**

This matter is before the Court on Defendants' Joint Motion to Enforce Settlement Agreement (ECF No. 43)[1], and the Motion Regarding Defendant's Attorney Fees filed by Defendant Nexxlinx of Maine, Inc. (EFC No. 83). Through their motion to enforce the settlement, Defendants maintain that the parties entered into a binding agreement to resolve Plaintiff's claims against Defendants. Plaintiff contends that because he did not agree to certain terms of the alleged agreement, the parties failed to reach a binding, enforceable agreement.

After consideration of the evidence, and the parties' written arguments,[2] the recommendation is that the Court grant Defendants' Joint Motion to Enforce Settlement Agreement.

---

[1] When a settlement agreement is alleged to have been reached in the course of litigation, and a dispute arises as to whether the parties reached an agreement, the party seeking to enforce the terms of the agreement should file a motion to enforce the settlement agreement. *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2001) (citing *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999)). Maine law, which governs in this case, is consistent with this approach. *In re Estate of Snow*, 2014 ME 105, ¶ 18.

[2] On September 4, 2014, the Court conducted an evidentiary hearing on the motion to enforce the settlement agreement. Following the hearing, the Court permitted the parties to file written argument. The Court received the final written argument on September 13, 2014.

## Findings of Fact

Based on the evidence presented at the hearing, I find, and recommend the adoption of, the following facts:

1. In July 2013, Plaintiff commenced a civil action against Defendants in which action Plaintiff alleged that he was improperly discharged from his employment (the civil action).

2. Attorney Brett Baber represented Plaintiff in the civil action.

3. By letter dated March 6, 2014, Michael Feldman, attorney for Defendant Nexxlinx in the civil action, informed Attorney Baber that Defendant Nexxlinx was prepared to pay Plaintiff $15,000 in consideration for the resolution of the civil action. In the letter, Attorney Feldman specifically wrote in pertinent part, "Nexxlinx of Maine is willing to pay a total of $15,000.00 in exchange for a complete release of all claims against Nexxlinx, Nexxlinx of Maine, OpenTable and all present and past employees of these companies. We would also require a confidentiality provision, a non-disparagement provision, and a no-contact provision in the ultimate settlement agreement." (Defendants' Joint Exh. 2.)

4. Through an e-mail communication dated March 6, 2014, Attorney Baber forwarded to Plaintiff a copy of Attorney Feldman's March 6 letter. (Defendants' Joint Exh. 3.)

5. Between March 6 and March 11, Attorney Baber and Plaintiff exchanged several e-mail communications related to the settlement offer and some of the issues in the case. (Defendants' Joint Exhs. 4, 5.)

6. On or about March 11, 2014, Attorney Baber spoke on the telephone with Plaintiff about the settlement offer. During the conversation, Attorney Baber told Plaintiff that he was willing to pursue the case on Plaintiff's behalf, but was not willing to invest money to depose a certain witness who was located in California. In the conversation, Plaintiff

instructed Attorney Baber to settle the case. (Attorney Baber's notes of conversation, Defendants' Joint Exh. 29.) Attorney Baber and Plaintiff did not discuss the non-economic terms of the settlement during the conversation.

7. Through an e-mail communication dated March 11, 2014, Attorney Baber wrote to Attorney Feldman and Seth Brewster, attorney for Defendant OpenTable, Inc.: "Mr. Michaud accepts the offer. Case settled. We would ask that $5,000 be allocated to attorney's fees, and $10,000 to non-economic physical damages (related to the impact on his physical health). Please send me a proposed release." (Defendants' Joint Exh. 6.)

8. On March 11, 2014, after Attorney Baber informed Attorneys Feldman and Brewster that Plaintiff accepted the settlement offer, through an e-mail communication, Plaintiff asked Attorney Baber whether the case was "really all over" and whether he "could get two more days to think." In his written response, Attorney Baber informed Plaintiff that although the matter was not finally concluded until Plaintiff signed a release, he had informed Defendants' counsel that the parties had reached an agreement. (Defendants' Joint Exh. 7.)

9. From March 11 through March 19, Attorney Baber engaged in a series of communications with Defendants' counsel regarding the terms of the written settlement agreement. During that time, the attorneys exchanged drafts of the agreement. At least one term proposed by Defendants was modified as the result of the communications between the attorneys. In particular, rather than characterize Plaintiff's separation from his employment as a termination, Defendants agreed to allow Plaintiff to resign from his employment.

10. On March 19, Attorney Baber forwarded to Plaintiff by e-mail the final version of the settlement agreement, and asked Plaintiff to sign the agreement.

11. Because Attorney Baber had not received a response from Plaintiff, on March 21, Attorney Baber wrote to Plaintiff inquiring of the status. (Defendants' Joint Exh. 15.) In his reply to the inquiry, Plaintiff wrote, "I've been sick lately. I need until Tuesday, the 25th." (Defendants' Joint Exh. 16.)

12. On March 25, through an e-mail communication, Plaintiff provided Attorney Baber with his analysis about the merits of his claims, and concluded his analysis as follows: "For all these reasons, I will not settle for $15,000." (Defendants' Joint Exh. 17.)

## **Discussion**[3]

Defendants contend that the parties reached a binding, enforceable agreement to settle Plaintiff's claims against Defendants, and to resolve the civil action. Plaintiff maintains that while he authorized his former attorney to settle this civil action in consideration of a payment of $15,000, the parties did not achieve a binding agreement because Plaintiff did not authorize his attorney to agree to the non-monetary terms of the alleged agreement. Plaintiff also contends that the purported agreement is unenforceable because the parties did not agree on specific language for the non-monetary terms set forth in Defendants' March 6 offer.

Given the parties' arguments, the Court, prior to the evidentiary hearing, identified the issues as: "(a) whether the non-monetary terms are material to the settlement, (b) whether Plaintiff's former counsel was authorized to agree to the non-monetary terms, and (c) whether the settlement is enforceable." (ECF No. 79.) In other words, to resolve Defendants' motion, one must determine whether Attorney Baber was authorized to bind Plaintiff to an agreement in accordance with the terms set forth in Attorney Feldman's March 6 letter.

---

[3] As part of the analysis to follow, I make some additional findings of fact, the adoption of which findings I recommend to the Court.

"Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact." *Muther v. Broad Cove Shore Ass'n,* 2009 ME 37, ¶ 6, 968 A.2d 539. "A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Campbell v. First Am. Title Ins. Co.*, 644 F. Supp. 126, 136 (D. Me. July 2, 2009) (quoting *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625, 631 (Me. 2004)). An agreement to agree on terms in the future does not amount to a binding settlement agreement, and whether the parties mutually assented to settlement or merely engaged in negotiation presents a question of intention. *In re Estate of Snow*, 2014 ME 105, ¶ 12, __ A.3d __. "The absence of a formalized contract does not affect the binding nature of a potential contract if the parties intended to close the contract prior to a formal writing." *McClare v. Rocha*, 2014 ME 4, ¶ 20, 86 A.3d 22, 29. "A writing may be nothing more than a *post hoc* memorialization of an already existing oral agreement." *Me. Surgical Supply Co. v. Intermedics Orthopedics, Inc.*, 756 F. Supp. 597, 602 (D. Me. 1991).

An attorney can bind his client to a settlement agreement if the attorney has actual authority to bind the client, as distinguished from the general authority to represent the client's interests. *Malave v. Carney Hosp.*, 170 F.3d 217, 221 (1st Cir. 1999); *Lane v. Me. Cent. R.R.*, 572 A.2d 1084, 1084-85 (Me. 1990). In this case, the most persuasive and credible evidence establishes that Attorney Baber had the authority to bind Plaintiff to a settlement pursuant to the terms included in the March 6 letter.

Preliminarily, Plaintiff concedes that he authorized Attorney Baber to settle the matter for a payment of $15,000. Plaintiff, however, argues that he did not authorize Attorney Baber to agree to the other terms included in the March 6 letter. The credible evidence proves otherwise.

Although Plaintiff was in receipt of Attorney Feldman's March 6, 2014, written settlement offer, in which offer Attorney Feldman expressly stated, "[w]e would also require a confidentiality provision, a non-disparagement provision, and a no-contact provision in the ultimate settlement agreement," Plaintiff did not condition his grant of settlement authority to Attorney Baber on the resolution of the non-monetary provisions of the alleged settlement agreement. Furthermore, despite the fact that Plaintiff engaged in several communications with Attorney Baber before and after the date on which Attorney Baber informed Defendants' counsel that the case was settled, Plaintiff did not object to the non-monetary terms of the letter. Had Plaintiff's objection to the agreement been based on Attorney Baber's purported lack of authority to bind Plaintiff to the non-monetary terms of the March 6 letter, Plaintiff presumably would have raised the issue prior to authorizing Attorney Baber to settle the matter, and most certainly when Plaintiff finally expressed his objection to the settlement.

Plaintiff's March 25 e-mail communication to Attorney Baber (Joint Exh. 17) is particularly revealing. In a relatively lengthy communication, after reviewing and emphasizing the strengths of his claim, Plaintiff informed Attorney Baber that he would not settle for $15,000. He did not mention any of the non-monetary terms. Plaintiff's focus on the relationship between the monetary consideration and the merits of his claim demonstrates that Plaintiff's objection to the settlement was based on the financial term, and was not based on Attorney Baber's alleged lack of authorization to commit Plaintiff to the non-monetary terms of the March 6 letter. Plaintiff's reliance upon the absence of a specific conversation with Attorney Baber regarding the non-monetary terms of the March 6 letter is simply Plaintiff's attempt to justify his withdrawal from a settlement that, upon further consideration, he determined was financially insufficient.

Plaintiff's contention that the settlement is unenforceable because the parties did not agree on the specific language for the non-monetary terms included in the March 6 letter is also unconvincing. Defendants' settlement, contained in the March 6 letter, included "a confidentiality provision, a non-disparagement provision, and a no-contact provision." Insofar as Defendants advised Attorney Baber that they would "require" the inclusion of the "provisions," the "provisions" constitute material terms to the agreement.[4] The fact that the parties did not agree on the exact language regarding the "provisions" does not render the settlement agreement unenforceable. The settlement agreement, as with any contract, is subject to a reasonable interpretation of its terms. *See*, *e.g.*, *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 18, 983 A.2d 382, 389 (rejecting argument that there was no agreement to pay a "commission" where the parties did not agree on the amount of the commission, and explaining that the law will supply a reasonable rate of commission); *Ault v. Pakulski*, 520 A.2d 703, 706 (Me. 1987) (Glassman, J., dissenting) ("If a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term.") (quoted with approval in *Fitzgerald*, *supra*); *see also OfficeMax v. Levesque,* 658 F.3d 94, 99 (1st Cir. 2011) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.") (quoting Restatement (Second) of Contracts § 203(a)). Without such a rule of law, a party would be able to cite the absence of an agreement on specific language on even the most basic terms typically included in a settlement agreement (*e.g.*, release

---

[4] Black's Law Dictionary defines a material term as follows: "A contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." Black's Law Dictionary, pp. 1698-99 (10th ed. 2014). A term is material when it involves "an essential and inducing feature" of the contract. *Backman v. Smirnov*, 751 F. Supp. 2d 304, 311 (D. Mass. Nov. 1, 2010) (quoting *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52, 172 N.E. 101, 102 (1930)).

of claims) as justification for the party's refusal to execute a settlement to which the party clearly agreed.

In this case, the parties agreed to resolve the civil action for consideration of a payment of $15,000, with terms of confidentiality, non-disparagement, and no-contact, to which terms a court would provide a reasonable interpretation should the parties present the court with a dispute as to the meaning of the terms. Because the parties agreed on the material terms of an agreement to settle the claims asserted in the civil action, the settlement agreement is enforceable.

## **Conclusion**

Based on the foregoing analysis, the recommendation is that the Court determine that Plaintiff authorized his former counsel to settle the civil action under the terms set forth in Defendants' written settlement offer dated March 6, 2014. The recommendation, therefore, is that the Court grant Defendants' Joint Motion to Enforce Settlement Agreement (ECF No. 43).[5]

In addition, although the evidence supports the enforcement of the settlement agreement, the record lacks a basis for an award of attorney fees. The recommendation, therefore, is that the Court deny Motion Regarding Defendant's Attorney Fees filed by Defendant Nexxlinx of Maine, Inc. (ECF No. 83).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[5] This Recommended Decision is not intended to comment upon, and should not be construed to comment upon, the reasonableness of all of the terms included in the Settlement Agreement and Mutual Release introduced at the hearing as Joint Exhibit 12.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

>/s/ John C. Nivison
>U.S. Magistrate Judge

Dated this 3rd day of October, 2014.